IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANTHONY CLARK, JR.                    *

Plaintiff                             *

v                                     *        Civil Action No. SAG-20-1819

OFFICER JOHN PORTMESS                  *

Defendant                             *
                                     ***

## MEMORANDUM OPINION

In response to this civil rights complaint, defendant Officer John Portmess[1] filed a motion to dismiss or, in the alternative, motion for summary judgment.  ECF No. 20.  Plaintiff Anthony Clark, Jr. opposes the motion.  ECF Nos. 35, 36.  Also pending is Clark's Motion for Leave to File an Amended Complaint, which Portmess opposes.  ECF Nos. 29, 31.  No hearing is necessary to resolve the issues.  *See* Local Rule 105.6 (D. Md. 2021).  For the reasons stated below, Plaintiff's motion to amend will be denied without prejudice to refiling and Defendant's motion will be granted as to claims against him in his official capacity and denied as to all remaining claims.

## BACKGROUND

### I.  Plaintiff's Allegations

Clark is a Maryland state inmate, who at all times relevant to this case has been incarcerated at the North Branch Correctional Institution ("NBCI") in Cumberland, Maryland.  Clark alleges that on September 26, 2019, while housed on A-Tier  in Housing Unit #1, he was "seized" by correctional officers who forced him to the ground.  Clark was then handcuffed while he was pinned face down and chest to the ground by several officers.  Although he was not resisting the

---

[1] The Clerk shall amend the docket to reflect defendant's full name.

officers, Clark claims that Portmess struck him repeatedly with a "very heavy thick mace canister" on the back, sides, and top of his head. Complaint, ECF No. 1 at 2; Declaration of Anthony Clark, ECF No. 35-2 at 1 ¶3.   Clark states that he sustained deep lacerations, open wounds leaving permanent scarring, and "substantial blood loss which pooled beneath my head."  ECF 1 at 3. Portmess and another officer lifted Clark by his handcuffs and dragged him to the medical room where no medical personnel were present. *Id.*; *see also* Declaration of Anthony Clark, ECF 35-2 at 2.  In the medical room, Clark was placed across the "bed-chair" and struck repeatedly with closed fists, taunted with racial epithets and threats, and sexually assaulted. ECF 1 at 3.  When medical personnel entered the room, they asked how blood got on the walls.  Clark's requests to file a complaint under the Prison Rape Elimination Act ("PREA"), 34 U.S.C. § 30301-30309 (2018) were denied by Lieutenant Whiteman and Sergeant Thomas.

Clark requests $250,000 in compensatory and punitive damages, and unspecified declaratory and injunctive relief.  With his opposition, Clark has submitted declarations, including his own and those of fellow inmates in support of his allegations.  In his motion for leave to file an amended complaint plaintiff requests leave to add Larry Gilpin, RN Michael Klepitch, and "Officer(s) John Doe" as defendants and to introduce new claims based on the conditions of his confinement and inadequate medical care.  ECF 29, 29-1.

## II. Defendant's Response

Portmess has filed verified exhibits including copies of relevant medical records, the report issued by the Intelligence and Investigative Division ("IID"), video footage, photographs, and declarations.  Portmess describes the September 26, 2019 incident as follows:

> While attempting to place handcuffs on Anthony Clark, Jr., he struck me on the left side of my face with a closed fist.  I then defended myself by striking Anthony Clark, Jr. with closed fists and knocking him to the ground.  He quickly got back up and charged at me again at which time I applied a short

burst of pepper spray to his facial area and was eventually able to force him to the ground where he continued to resist the application of handcuffs and attempted to get back up. I then struck Anthony Clark, Jr., several times with my pepper spray canister in the face and head in a continued effort to gain his compliance. With the assistance of responding staff members, Anthony Clark, Jr., was eventually brought under control and was placed in handcuffs.

Declaration of Officer John Portmess, ECF 20-6 ¶ 4.

Portmess denies Clark's allegations that he repeatedly struck Clark in the head with a closed fist, threatened him, used racial epithets, and sexually assaulted him, and states that he has no knowledge of any other staff members doing so. *Id.* ¶¶ 8-10. Portmess states that after Clark's medical evaluation was completed, Clark was offered and refused a decontamination shower and was escorted to a cell on Housing Unit #1, where he remained on Staff Alert status until October 9, 2019. *Id.* ¶ 6.

Clark's medical records evince that he was seen on September 26, 2019 at 1:25 p.m. by Michael Klepitch, R.N. for pepper spray exposure. Klepitch reported that Clark was alert and oriented, but because Clark would not cooperate, Klepitch was unable to take his vital signs. Klepitch observed that there was "blood spatter everywhere in exam room due to patient spitting blood on the wall," Clark had "4 minimal lacerations," and "no other injuries noted." ECF 20-7 at 3. Klepitch applied a pressure dressing and cleaned the blood from Clark's face and eyes. Clark signed a Release of Responsibility form to acknowledge that he refused a physical examination on September 26, 2019. ECF 20-7 at 2. Notably, Clark now denies being uncooperative with medical personnel or refusing a shower. Clark Decl. ECF No. 35-2 at 2. Three weeks later, on October 21, 2019, during an unscheduled nurse visit, William Beeman, R.N. observed no wounds on Clark. ECF 20-7 at 5.

The Intelligence and Investigative Division ("IID") of the Department of Public Safety and Correctional Services assigned Detective Sergeant C. McKenzie to investigate the incident. ECF

No. 20-8 at 2, 6.  Clark refused to exit his cell to speak with McKenzie.  *Id*. at 6.  On November

21, 2019, McKenzie reviewed the video recording of the incident, which he described in his report:

> On 9/26/19 at approx. 1145 hrs., the video shows Inmates Clark and
> Stevenson talking with COII Portmess and COII Saville at the officers station
> at the front of the tier. There is some conversation which then clearly shows
> Inmate Stevenson becoming aggravated with COII Saville as Inmate Clark
> attempts to grab the left arm of Inmate Stevenson.  COII Portmess attempts
> to secure the left arm of Inmate Clark, who then strikes COII Portmess in
> the face with closed fist punch.  COII Saville then takes Inmate Stevenson to the
> floor as additional correctional staff respond.  Both inmates were then secured
> and removed from the tier without further incident.

*Id*.  McKenzie concluded "there is no indication that Inmate Clark was assaulted by staff during

this incident."  *Id*.

The Court's review of the video-only, no-audio footage in evidence shows two inmates in

discussion with two officers by a desk.  After some discussion, the inmate wearing dark pants

(Clark) touches or brushes against the other inmate (in lighter pants, Inmate Stevenson), and the

officer closest to Clark, Portmess, reaches for Clark's arm (seemingly in a nonthreatening way).

In response, Clark punches Portmess with a closed fist.  Portmess then punches Clark with a closed

fist, and other officers arrive to assist.  A second view of the scene shows Clark being taken to the

ground, surrounded by officers, and handcuffed.  Officer Portmess is seen making upward and

downward arm motions in the area where Clark's head is on the ground.  Clark is lifted by his

handcuffs.  The escorting officers then drag Clark by his handcuffs, with his hands over his head.

DVD 19-NB-152, ECF Nos. 20, 32.  The recording does not continue while Clark is in the medical

room.

Photographs of Clark taken at 11:56 a.m. show that his eyes were swollen shut, there is

blood and or lacerations on his face and head, and his shirt is stained with what is likely blood and

pepper spray.  ECF No. 20-5 at 18-19.

On May 24, 2021, Clark was placed on a pass list to view the video footage. According to correctional staff, Clark refused the pass. Declaration of John White, ECF No. 27-1.  Clark denies that he refused the pass to watch the recording of the September 26, 2019 incident.  Clark Decl. ECF No. 35-2 at ¶ 21.

After the incident, Clark was charged with violating Rule 101 (assault or battery on staff) and Rule 316 (disobeying an order).  He was found guilty after an adjustment hearing of both charges and sanctioned with the revocation of 365 diminution credits, loss of privileges for 60 days, and 180 days of segregation.  ECF 20-5 at 5-7.

Case manager Benjamin Bradley states that NBCI Investigations Captain Cutter determined that Clark, or another inmate acting on his behalf, called the PREA Hotline to report an assault on September 26, 2019 in Housing Unit #1.  "This call was not made in reference to a PREA incident or to report a possible sexual assault."  Declaration of Benjamin Bradley, ECF No. 20-4 at 1 ¶ 4.  Clark did not submit a PREA complaint about the September 26, 2019 use of force incident, and therefore no PREA investigation was initiated.  *Id*. ¶ 5.

On October 21, 2019, Clark submitted an administrative remedy procedure complaint ("ARP") which was designated as "ARP NBCI-2147-19" and alleged that on September 26, 2019, Portmess assaulted him, taunted him with racial expletives, and sexually assaulted him with a mace can.  ECF No. 20-4 at 6 (attached to IID notification).  The ARP was procedurally dismissed by the ARP Coordinator because the matter was under investigation by IID in Case No. IID-19-35-01855. *Id*.; *see also* ARP Index, ECF 20-4 at 5.  Clark's ARP dated November 1, 2019 was procedurally dismissed as repetitive to ARP NBCI-2147-19.  ECF 20-4 at 5.  Clark did not pursue a grievance with the Inmate Grievance Office (IGO) related to any allegation of excessive force, sexual assault, access to PREA, or conditions of confinement on September 26, 2019. Declaration

of Pamela White, IGO, ECF 20-10.

## STANDARD OF REVIEW

Portmess's dispositive motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty*., 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 F. App'x 220, 222 (4th Cir. 2016) (per curiam). The Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and a reasonable opportunity for discovery. *See Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt*., 721 F.3d 264, 281 (4th Cir. 2013). When the movant expressly captions its motion as one for summary judgment "in the alternative" and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth*., 149 F.3d 253, 261 (4th Cir. 1998). Clark was provided such notice. He also received notification from the Clerk of defendant's dispositive motion and the opportunity to reply with exhibits and declarations

6

and has done so.  Thus, conversion of this motion to one for summary judgment is appropriate and this Court will consider all of the exhibits filed.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *see also Cybernet, LLC v. David*, 954 F.3d 162, 168 (4th Cir. 2020). To avoid summary judgment, the nonmoving party must demonstrate that there is a genuine dispute of material fact to preclude the award of summary judgment as a matter of law. *Ricci v. DeStefano,* 557 U.S. 557, 585-86 (2009); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 585-86 (1986); *see also Gordon v. CIGNA Corp*., 890 F.3d 463, 470 (4th Cir. 2018).

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion.  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) (emphasis in original).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id*. at 248.  There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.; see CTB, Inc. v. Hog Slat, Inc*., 954 F.3d 647, 658 (4th Cir. 2020); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016).  "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original)

(quoting Fed. R. Civ. P. 56(e)), cert. denied, 541 U.S. 1042 (2004). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 645 (4th Cir. 2002). "A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law." *Iraq Middle Mkt. Dev. Found. v. Harmoosh,* 848 F.3d 235, 238 (4th Cir. 2017). The court also is mindful of its obligation to construe liberally the submissions of a self-represented plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Importantly, the district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Thus, the trial court may not make credibility determinations on summary judgment. *Wilson v. Prince George's Cty*., 893 F.3d 213, 218-19 (4th Cir. 2018); *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Dennis*, 290 F.3d at 644-45. Where there is conflicting evidence such as competing affidavits, summary judgment is generally inappropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility.

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

**DISCUSSION**

Portmess asserts that he is entitled to dismissal of the claims against him or summary judgment in his favor, raising affirmative defenses of failure to exhaust administrative remedies Eleventh Amendment immunity, and qualified immunity, and argues that Clark has failed to state an Eighth Amendment claim for excessive use of force.

**A.  Exhaustion of Administrative Remedies**

Inmate claims not properly presented through the administrative remedy procedure must be dismissed pursuant to the Prisoner Litigation Reform Act ("PLRA"), which provides in part that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (2013). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). Exhaustion may only be excused if the administrative process is not actually available. *See Ross v. Blake*, 578 U.S. 632, 641-42 (2016) (holding that an inmate "must exhaust available remedies but need not exhaust unavailable ones"). "[A]n administrative remedy is not considered to have been available if a prisoner, though no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).  Administrative process is not available when prison officials are "unable or consistently unwilling to provide any relief to aggrieved inmates" such that it effectively "operates as a simple dead end"; the procedure is so "opaque" that it is practically incapable of use; or prison administrators thwart inmates from filing grievances. *Ross*, 578 U.S. at 643-44.

Portmess claims that Clark's claims are unexhausted due to his failure to appeal his

grievance all the way to the Inmate Grievance Office through all three steps in the administrative process.  In Clark's view, he exhausted his claims and when "officers attempted to frustrate and impede my attempts to utilize the grievance system, I still tried to navigate around those erected obstacles," and he informed the administration of these actions even when he received no response to his grievances or inquiries.  ECF No. 35-2 at 4 ¶ 19.  Clark's fellow inmate, Christopher Witcher, states that he heard Clark asking correctional officers to deposit his mail in the mailbox and officers ignored him.  When Clark asked one officer to take his mail, the officer responded, "I'am [sic] not going to help you take any Officers at IGO, Dum [N*****]!"  Declaration of Christopher Witcher, ECF 35-5 at 2.

Thus, the parties have provided conflicting information about the availability of the administrative process to Clark, which presents a genuine dispute of material fact and involves issues of credibility that precludes pre-discovery summary judgment for failure to exhaust administrative remedies.

**B.  Eleventh Amendment**

The Eleventh Amendment to the Constitution immunizes state agencies and departments from citizen suits for damages in federal court.  *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  Portmess is a Maryland state employee.  Suits against agents of the state for acts taken in their official capacities are equivalent to suing the state itself.  *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989).  Accordingly, the claims against Portmess in his official capacity are barred by the Eleventh Amendment., *see Pennhurst*, 465 U.S. at 100–01, and will be dismissed.

**C.  Eighth Amendment Claim**

Whether force used by prison officials was excessive is determined by inquiring if "force

was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). The court must look at the need for the application of force, the relationship between that need and the amount of force applied, the extent of the injury inflicted, the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials, and any efforts made to temper the severity of the response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

Here, the record shows that the events on September 26, 2019, began when Clark punched Portmess with a closed fist. Portmess responded by punching Clark, other officers arrived immediately, Clark was taken to the ground, and Clark was handcuffed. At some point Portmess sprayed pepper spray in Clark's face. It is unclear whether Clark continued to resist once he was on the ground surrounded by officers, as alleged by Portmess. If Clark did not resist, as he asserts, then there is a question whether the force used, including hitting him in the head with a heavy can, constituted a good faith effort to restore prison discipline and security or infliction of force in a malicious and sadistic manner. The verified evidence and declarations provided by the parties conflict, and the video recording does not resolve these questions. Rather, resolution of these issues involves questions of credibility inappropriate for summary judgment. Clark's account of the events in the medical room is also refuted by Portmess, so that resolving that factual dispute is equally inappropriate on summary judgment.

### D.  Qualified Immunity

Portmess argues he is entitled to qualified immunity and that summary judgment is appropriate on that basis. However, Portmess offers no real argument for application of the doctrine, aside from boilerplate statements setting out the legal standard. The defense therefore fails. Further, the qualified immunity defense is unavailing both because the constitutional right

11

was well-established at the time of the incidents at issue and because there exists a material dispute

of fact regarding whether the conduct allegedly violative of Clark's constitutional rights actually

occurred.  *See Willingham v. Crooke*, 412 F.3d 553, 559 (4th Cir. 2005).  While it is true that

qualified immunity is ordinarily determined at the summary judgment stage of litigation, *see*

*Wilson v. Kittoe*, 337 F.3d 392, 397 (4th Cir. 2003), the defense of "[q]ualified immunity does not,

however, override the ordinary rules applicable to summary judgment proceedings." *Willingham*,

412 F.3d at 559, citing *Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992).   As noted, there are

genuine disputes of material fact that preclude summary judgment at this time.  *See Willingham*,

412 F.3d at 559. Thus, qualified immunity does not serve as a basis for summary judgment under

the present record in this case.

## CONCLUSION

For these reasons, Portmess's dispositive motion will be denied, except as to Clark's claims

against him in his official capacity, which will be dismissed.   Because it is anticipated that

discovery will be necessary to complete the factual record, the court will grant Clark an opportunity

to file a motion for appointment of counsel to assist him as this case proceeds. Clark's motion to

amend will be denied without prejudice to refiling such a motion, after counsel is appointed.   A

separate order will follow.


November 9, 2021                                            /s/
Date                                             Stephanie A. Gallagher
                                                 United States District Judge